Kenneth Lee CLAIBORNE, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

June 10, 1977.

Certiorari Denied by Supreme Court Sept. 6, 1977.

John R. Conkin, Jefferson City, for appellant.

Brooks McLemore, Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Richard

A. Fisher, Dist. Atty. Gen., Cleveland, Steve Bebb, Asst. Dist. Atty., Sweetwater, Herman Gregory, Special Prosecutor, Athens, for appellee.

TATUM, Judge.

## OPINION

A McMinn County Grand Jury returned a two-count indictment against Kenneth Lee Claiborne. The indictment charged him with murder in the first degree in violation of T.C.A. § 39–2402(2)(c) [killing of a peace officer] and violation of T.C.A. § 39–2402(4) [committing murder in the perpetration of robbery]. Venue was changed to Monroe County upon the defendant's application. The Monroe County jury found the defendant guilty under the first count (murder of a peace officer); punishment was fixed at death by electrocution. The jury had been instructed not to consider the second count of the indictment if it found the defendant guilty under the first count.

The defendant has questioned the sufficiency of the evidence, the constitutionality of the death penalty statutes (T.C.A. §§ 39–2405 and 39–2406), competency of the evidence, and the sufficiency of the Trial Judge's jury instructions. We approve the Criminal Court's judgment on all issues except the constitutional question.

In his first assignment of error, the defendant contends "[t]hat the evidence in the case preponderates against the verdict of the jury and in favor of the innocence of the defendant of the crime of murder in the first degree . . . ." We will summarize the facts as established by the accredited evidence.

On the night of 19 August 1975, the defendant and Gary Wolfe went by the home of Joyce McIntosh in Morristown, Tennessee, and asked her to go for a ride with them in a pick-up truck. She noticed "a pistol and then a longer gun" in the truck. They drove around and eventually stopped at an Exxon service station in Knox County. The defendant suggested "hitting a place" because he needed money.

When they reached the Exxon station in Knox County, Joyce McIntosh and the defendant went inside the station and "got some things out the machines," and then went to the restroom. The defendant came out of the restroom and asked the operator of the station if he had "change for a ten." The station operator told him, "No." The defendant dropped a gun on the floor, picked it up and aimed it at the operator's head, demanding all of his money. The operator gave him the money but the defendant was not satisfied with the amount and threatened to kill the operator if he did not "come up with a hundred dollars right away." Gary Wolfe then came into the station with a shotgun.

As customers drove into the station, Claiborne followed the operator out to the islands and waited while the operator served the customers, holding the gun out of sight.

The defendant suspected that the service station operator told a customer to call the police. He told the operator, "I am going to stick around and if a cop does pull in I am going to kill you and him." The service station operator testified that "the full time he was there he was saying things, like you know, 'I hope a cop does pull in here right now because I want to kill him.'"

The defendant and Gary Wolfe then locked the operator in the restroom. The defendant wanted to kill the service station operator, but Wolfe convinced him not to do it. Claiborne told the operator that if the operator came out of the restroom in less than one-half hour, Claiborne would kill him. About five or ten minutes later, the defendant reentered the restroom and told the operator that if he had left the restroom, then he would have been killed. After this occurred, the operator remained in the restroom for a "pretty long length of time because I was really scared."

Joyce McIntosh remained in the restroom during the entire episode at the service station. Claiborne, Wolfe, and McIntosh arrived at the service station about 1:00 o'clock A.M. on August 20 and remained there for about one hour.

These parties then went to Crazy Ed's Truck Stop in McMinn County, arriving there about 3:00 o'clock A.M., on August 20. Wolfe and McIntosh remained in the truck when the defendant entered the truck stop and asked the cashier for a dollar's worth of change. She gave him the change and he then asked for an additional dollar in change. The defendant walked to a table where McMinn County Deputy Sheriff Dan Mull was sitting and, standing behind Deputy Mull, put his gun to the back of Deputy Mull's neck and told him "not to move." The defendant used his left hand to disarm Deputy Mull, then fired a fatal shot into Mull's neck. The defendant pointed the gun at an eleven-year-old girl, so Don Lawson shouted at him. The defendant shot at Mr. Lawson and left the building. Mr. Lawson and Marvin Reece pursued the pick-up truck of defendant and his companions in Deputy Mull's patrol car. Mr. Reece was a dispatcher for McMinn County, but was not a police officer. He had been riding with Deputy Mull before they stopped for coffee.

The evidence is conflicting as to whether the defendant was intoxicated at the time the crime was committed. There is evidence that the defendant was addicted to alcohol and drugs.

In the first assignment, the defendant argues that there is no evidence of "a willful, deliberate, and malicious killing" of the peace officer as required under T.C.A. § 39–2402(2)(c). We do not agree. There was evidence that while at the service station in Knox County, the defendant expressed a desire to kill a police officer. He took the pistol in the restaurant with him and after seeing the deputy sheriff, walked behind him, purposely pointed the pistol to the back of his neck and fired. The use of a deadly weapon in itself is sufficient to support a finding of malice. *Everett v. State,* 528 S.W.2d 25 (Tenn.1975); *Sikes v. State,* 524 S.W.2d 483 (Tenn.1975).

The defendant also argues that there was no evidence of premeditation. While premeditation is not an essential element of first degree murder as defined

under this Code section, there was abundant evidence to support a finding of premeditation.

> T.C.A. § 39–2402(2)(c) provides, in part: "Murder in the first degree.—An individual commits murder in the first degree if:
>
> \* \* \* \* \* \*
>
> (2) he commits a willfull [sic], deliberate, and malicious killing or murder, and:
>
> \* \* \* \* \* \*
>
> (c) the victim is known to the actor to be a peace officer or fireman acting in the course of his employment . . . ."

■ The defendant argues that the evidence will not support a finding that the defendant knew that the victim was a peace officer acting in the course of his employment. The police officer was acting in the course of his employment if he was performing a duty for which he was employed. *See, Travelers Insurance Co. v. Googe*, 217 Tenn. 272, 397 S.W.2d 368 (1965); *Shubert v. Steelman*, 214 Tenn. 102, 377 S.W.2d 940 (1964).

The police officer was in the restaurant at 3:00 o'clock A.M., dressed in the full uniform of a deputy sheriff, wearing a badge and armed with a pistol. The restaurant was "full of people" at this hour. These facts are sufficient to have given the defendant unequivocal evidence that the peace officer was on duty and "acting in the course of his employment." It is common knowledge that a peace officer, in checking businesses and doing general patrol work, often enters restaurants where people (including publicly drunk persons and other law violators) congregate in early morning hours. The fact that this officer was drinking coffee while carrying out his duties is of no assistance to the defendant. The Sheriff of McMinn County testified that the deceased was working the night shift and that his duties were "routine patrol work, checking businesses and patrol." The evidence was sufficient to support the finding of the jury that the defendant knew Deputy Mull was a peace officer acting in the course of his employment.

■ The Trial Judge having approved a verdict of guilty rendered by the jury, the defendant stands before this court presumed to be guilty of first degree murder. The burden of proof is upon the defendant to show that the evidence preponderates against the jury's verdict. In the absence of such showing, we will not disturb the verdict or the judgment thereon. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963); *Briggs v. State*, 501 S.W.2d 831 (Tenn.Crim. App.1973). We find the evidence supporting the conviction to be overwhelming; it does not preponderate against the jury verdict and in favor of the innocence of the defendant. Assignment I is overruled.

In Assignments IV, V and VI, the defendant complains of the action of the Trial Judge in admitting testimony of Joyce McIntosh and David E. Quinn concerning the robbery of the service station in Knox County, and in admitting the testimony of Quinn about the defendant's statements concerning a desire to kill a policeman.

■ In *Ellison v. State*, 549 S.W.2d 691 (Tenn.Crim.App.1976), this Court discussed at length many exceptions to the rule that evidence of crimes other than that charged in the indictment is not admissible. Evidence of other crimes is admissible if it tends to prove the defendant's guilt of the crime charged; or if it is relevant to any material issue on trial, including (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the others, and (5) the identity of defendant on trial.

■ Where the previously committed crime is so closely related to the crime under investigation at trial, in point of time and place, and so intimately associated with it that they both form one continuous transaction, the whole transaction may be shown. The reason is that all such acts are admissible as necessary parts of the proof of the entire deed. There is no set test to determine the relevancy of evidence of another crime. The question must be resolved in each case by logic and general experience.

*See generally, Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963); *Ellison v. State, supra; Bivens v. State,* 4 Tenn.Cr.App. 580, 474 S.W.2d 431 (1971); *Coffman v. State,* 3 Tenn.Cr.App. 634, 466 S.W.2d 241 (1970).

■ Bearing in mind that the defendant was being tried for both the killing of the police officer and murder in the commission of robbery, we must consider the fact that only one hour elapsed from the time the defendant left the service station in Knox County and the time he entered the restaurant in McMinn County. He was armed when he entered both places and in both instances, he asked for change. He left the Knox County service station after having expressed a desire and intent to kill a police officer.

With these and the other facts in mind, we hold that the evidence of the robbery of the service station and the statements made by the defendant were admissible for several reasons. The occurrences at the first robbery indicated a common scheme or plan for commission of other crimes so related that proof of the first robbery and the circumstances thereof tended to establish the defendant's intent to rob the restaurant in McMinn County and to murder the police officer. The evidence of the first robbery also indicated motive of the defendant, and evidences the absence of mistake or accident, as was asserted by the defendant in his brief. Finally, the evidence corroborated the identity of the defendant. These assignments are overruled.

In the defendant's seventh assignment of error, he states that the Court erred in refusing to grant his requested instruction to the jury:

"Voluntary intoxication may be looked to for the purpose of determining whether the mind of the accused was capable of the deliberation required in order to convict for murder in the first degree."

The Trial Judge gave the following instruction to the jury, regarding voluntary intoxication:

" . . . Voluntary drunkenness is generally no defense to a criminal charge. If a person voluntarily drinks or takes drugs and becomes intoxicated and while in that condition commits an act which would be a crime if he were sober, he is fully responsible for his conduct. This is so unless his drunkenness had continued for such a long period of time so as to result in settled insanity by the time of the offense. It is the duty of men to refrain from placing themselves voluntarily in a condition which poses a danger to other people.

However, as an exception to this rule voluntary drunkenness is a defense where a specific intent is an essential element of the crime and the defendant was intoxicated to the extent that he could not have possessed this specific intent."

■ We think that voluntary intoxication of the defendant could not reduce a homicide to second degree murder or a lesser offense when "the victim is known to the actor to be a police officer or fireman acting in the course of his employment."

■ It is well settled that in a prosecution for murder in the first degree in violation of T.C.A. § 39–2402(1), when an accused is rendered totally incapable of premeditation and deliberation through intoxication, the grade of homicide may be reduced to second degree murder. *State v. Bullington,* 532 S.W.2d 556 (Tenn.1976). No degree of voluntary intoxication will excuse or mitigate second degree murder or lesser included offenses. *State v. Bullington, supra; Bostick v. State,* 210 Tenn. 620, 360 S.W.2d 472 (1962); *Harper v. State,* 206 Tenn. 509, 334 S.W.2d 933 (1960).

The acts denounced under subsections (2), (3), and (4) of T.C.A. § 39–2402 constitute first degree murder, even when *actual deliberation and premeditation are absent.* If the State proves murder of a police officer as defined by T.C.A. § 39–2402(2)(c), then deliberation is implied, regardless of the extent of the accused's intoxication. *See generally, Tosh v. State,* 527 S.W.2d 146

. . .

(Tenn.Crim.App.1975).[1] In drafting subsection (1) of T.C.A. § 39–2402, the Legislature required "premeditation" to constitute first degree murder. In subsection (2) the word "premeditated" is omitted. The distinction in the definition of first degree murder in subsections (1) and (2) evinces a legislative intent to declare all intentional murders described in subsection (2) to be murder in the first degree even when the homicide would have been only murder in the second degree if the victim were not one of the class described in subsection (2). The defendant's voluntary intoxication could not reduce the degree of homicide from murder in the first degree in the prosecution under T.C.A. § 39–2402(2). The elements of deliberation and premeditation are inferred in a subsection (2) prosecution. There was no error in refusing the special request for jury instructions submitted by the defendant.

 The remaining assignments of error attack the mandatory death penalty provisions of T.C.A. §§ 39–2404 and 39–2406 as being unconstitutional. Since the filing of the briefs and oral argument in this case, the Supreme Court of Tennessee has declared the statutory provisions for mandatory death sentences to be unconstitutional. The State has since filed a Supplemental Brief making it known to us that on 8 February 1977, Honorable Ray Blanton, Governor of Tennessee, has commuted the defendant's sentence of death by electrocution to a sentence of life imprisonment in the State Penitentiary. The Supreme Court, in Opinion on Petitions to Rehear in *Collins v. State*, 550 S.W.2d 643 (Tenn.1977) held that executive commutation of a death sentence to life imprisonment cured the constitutional infirmity of our statute.

The judgment of the Criminal Court of Monroe County is affirmed, as commuted to life imprisonment.

WALKER, P. J., and DUNCAN, J., concur.

---

1. In *Tosh v. State, supra,* this Court held that it was not necessary for the State to prove that the killing was "willful, deliberate and malicious" to convict for first degree murder in a felony-murder prosecution under T.C.A. § 39–2402(4), even though these words are used in the statute defining this crime.