**Robert Earl PRYOR, Petitioner-Appellee,**

v.

**James H. ROSE, Warden,
Respondent-Appellant.**

No. 81–5401.

United States Court of Appeals,
Sixth Circuit.

Argued June 20, 1983.

Decided Jan. 6, 1984.

William M. Leech, Jr., Atty. Gen. of Tenn., Nashville, Tenn., Jennifer Helton Small, J. Andrew Hoyal argued, Asst. Attys. Gen., for respondent-appellant.

Robert Earl Pryor, pro se, William H. Farmer, Federal Public Defender, argued, Ross E. Alderman, Nashville, Tenn., for petitioner-appellee.

Before LIVELY, Chief Judge, and EDWARDS, ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY and WELLFORD, Circuit Judges.*

* The original panel decision, published at 699 F.2d 287 (6th Cir.1983), was vacated by order

CONTIE, Circuit Judge.

This is the rehearing of an appeal from a district court order which granted relief to the appellee, Robert Pryor, on a petition for habeas corpus brought pursuant to 28 U.S.C. § 2254. The court held that the imposition of consecutive sentences for assault with intent to commit robbery with a deadly weapon and assault with intent to commit first degree murder violated the double jeopardy clause of the United States Constitution. It therefore granted the writ as to the conviction for assault with intent to commit first degree murder. We affirm.

## I.

Pryor was tried in the Criminal Court of Shelby County, Tennessee. The record reflects that on August 20, 1977, John Winbush was at a manufacturing plant in Memphis. As he walked through an alley behind the plant in search of cigarettes, he encountered the petitioner. Winbush testified that the following events then occurred:

A. Okay, uh-huh. He called me—came up to me just like that, so I turned and walked away from him. So he hit me right here (indicating). It burst this a loose and knocked me down, got blood all in my eyes and everything. 'Course however this has been sewed up now, you know. Since I went to the hospital and everything. Then after he knocked me down he start beating on me with that pipe, that stick, or whatever you call it, you know. And ah, the money that I had in my front pocket he went in there and got that.

\*　　\*　　\*　　\*　　\*　　\*

Q. All right, Mr. Winbush, you stated that you were struck with a cane or metal—

A. Yeah, something made like a walking stick.

Q. Let me hand you this object and ask if you can identify it?

of the court.

A. Yeah, that's what he had. He had it in his hand when he called me up to him. That's right, show did and start beating me with this thang. After he knocked me down, kept on beating me and he told me, I'm going to kill you man, I'm going to kill you. Give me some more money.

\* \* \* \* \* \*

Q. All right sir,—

A. He kept telling me that, at the time he was beating me with this (indicating).

\* \* \* \* \* \*

Q. Mr. Winbush, how many times were you struck with this pipe?

A. Well, all I know, I was hit lots of times with that pipe I couldn't just say exactly how many times. I know I was hit a lots of times with it. I couldn't tell you the exact amount of licks that he did hit me with it. I'd say quite a few times, he did.

Two indictments arose from this incident. The first accused the petitioner of assaulting Winbush with the intent to commit a willful, malicious, deliberate and premeditated murder. The second indictment charged Pryor with robbery with a deadly weapon. At trial, the jury found the petitioner guilty of assault with intent to commit first degree murder and imposed a penalty of six to twenty-one years imprisonment. The jury also found Pryor guilty of assault with intent to commit robbery with a deadly weapon, a lesser included offense of robbery with a deadly weapon. It affixed a sentence of ten to twenty-one years imprisonment. The trial judge ordered that these sentences be served consecutively.

Under then applicable Tennessee law, the jury was entitled to convict Pryor on the first indictment only if the petitioner would have been guilty of first degree murder had the victim died. Accordingly, Tennessee's first degree murder statute is relevant:[1]

39.2402. Murder in the first degree.—An individual commits murder in the first degree if:

(1) He commits a willful, deliberate, malicious and premeditated killing or murder;

(2) He commits a willful, deliberate, and malicious killing or murder, and:

(a) The victim is an employee of the department of correction having custody of the actor,

(b) The victim is a prison inmate in custody with the actor,

(c) The victim is known to the actor to be a peace officer or fireman acting in the course of his employment,

(d) The victim is a judge acting in the course of his judicial duties,

(e) The victim is a popularly elected public official,

(f) The offense is committed for hire; or,

(g) The offense is committed while attempting to evade law enforcement officials;

(3) He hires another to commit a willful, deliberate, malicious and premeditated killing or murder, and such hiring causes the death of the victim; or

(4) He commits a willful, deliberate and malicious killing or murder during the perpetration of any arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a destructive device or bomb.

In defining first degree murder, the trial judge instructed the jury under options 1 and 4 of this statute:

An individual commits murder in the first degree if: (1) he commits a willful, deliberate, and malicious and premeditated killing or murder; or *(4) he commits a willful, deliberate and malicious killing or murder during the perpetration of any arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a de-*

---

1. Tenn.Code Ann. § 39.2402. This provision has since been amended. *See* Tenn.Code Ann. § 39–2–202.

*structive device or bomb. When the act of killing is not done in the commission of some one of the felonies named in the definition of murder above,* in order that it be murder in the first degree, the killing must be done willfully, this is, of purpose, with the intent that the act by which the life of the party is taken, should have that effect; deliberately, that is, with a cool purpose; maliciously, that is, with malice aforethought; and with premeditation, that is, a design to kill must be formed before the act is performed, by which death is produced. In other words, proof must be adduced to satisfy the mind of the jury that the death of the party slain was the ultimate result which the concurring will, deliberation and premeditation of the party accused sought. [Emphasis supplied.]

The petitioner contends that the felony-murder theory contained in the instruction permitted the requirement of premeditation to be satisfied by a finding of intent to commit robbery. He argues that the two crimes for which he was convicted are thus the "same" for double jeopardy purposes, and that he therefore can neither be convicted of both crimes nor given consecutive sentences.

## II.

Before considering the merits of this question, we must address the appellant's claim that certain state court findings are entitled to a presumption of correctness under *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The parties agree that the double jeopardy clause protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The Tennessee Court of Criminal Appeals held, however, that the offenses committed by Pryor were not the same:

The proof accredited by the jury verdict clearly establishes there was an assault and taking of the money from the victim's front pocket.... Then after appellant had knocked the victim down and

gotten his money, appellant told the victim, "I'm going to kill you man, I'm going to kill you. Give me some more money."
... The appellant had completed the assault with the intent to commit robbery when the money was taken.

Appellant resumed beating the victim and expressed the intent to kill. The jury adduced from the facts the appellant intended to carry out this new exclamation. There were two separate and distinct offenses committed. [Citations omitted.]

The appellant argues that since the petitioner does not rely on any of the exceptions listed in 28 U.S.C. § 2254(d), the quoted statement is a finding of fact which is binding on this court. We disagree. Whether multiple crimes committed during a single transaction are the same offense under the standard approved by the Supreme Court is a question of law. The presumption of correctness attaches neither to state court conclusions of law, *Marshall v. Lonberger,* ___ U.S. ___, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983), nor to state court applications of law to the facts of individual cases. *Sumner,* 449 U.S. at 544, 101 S.Ct. at 767. Moreover, the Tennessee Court of Criminal Appeals was not entitled to examine the evidence or arguments actually introduced at trial in deciding whether the offenses were the same for double jeopardy purposes. The court should instead have focused on the proof necessary to establish the statutory elements of each offense. *See Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980); *Pandelli v. United States,* 635 F.2d 533, 538 (6th Cir.1980). Consequently, this court will fully review the petitioner's double jeopardy claim.

## III.

In *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), the Supreme Court adopted the rule of statutory construction set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), for determin-

ing whether two offenses are the same under the double jeopardy clause:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. . . .

■ As has been indicated, this test focuses upon the proof necessary to establish the statutory elements of each offense, rather than on the specific evidence or arguments presented at trial. *See, e.g., Vitale,* 447 U.S. at 416, 100 S.Ct. at 2265. If two offenses are not the same under this standard, cumulative sentencing is permissible. Conversely, the Supreme Court has held that if two offenses are the same under this test, consecutive sentences are forbidden unless there is a clear indication of legislative intent to the contrary. *Whalen v. United States,* 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980). Consecutive sentences are permissible where such an intent is clearly expressed because "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981). The underlying theory is that since legislatures possess the prerogative to set criminal penalties, *Whalen,* 445 U.S. at 689, 100 S.Ct. at 1436, a criminal defendant does not receive multiple punishments for an offense unless a court imposes a greater penalty than provided for by statute.

The current case therefore presents two questions. First, we must determine whether the two crimes for which Pryor was convicted are the same offense under the *Blockburger* test. If so, we must consider whether the Tennessee legislature in-

tended consecutive sentences for the two crimes.

Under the rationale of *Pandelli, supra,* Tennessee's first degree murder statute is a "multi-purpose criminal statute" because it seeks to punish four different categories of unlawful killings. Consequently, before the court may apply the *Blockburger* test to this statute, the court must select from the latter only those alternatives that are relevant to this case. *Pandelli,* 635 F.2d at 537–38; *see also Whalen,* 445 U.S. at 694, 100 S.Ct. at 1439. The first alternative concerning willful, deliberate, malicious and premeditated killings is relevant because it is the theory reflected in the indictment. The fourth alternative concerning felony-murder also is relevant because the trial judge included it in his instructions to the jury.

■ The appellant argues that the only relevant alternative is that upon which the indictment was grounded. Neither the Supreme Court nor this court has addressed this issue. Although the published opinions discuss the various indictments under which the defendants were prosecuted, none considered the problem of a variance between the indictment and the jury instructions.[2] We hold that since a jury is presumed to look to its instructions for guidance in discharging the grave responsibility of ascertaining the guilt or innocence of a criminal defendant, *see Parker v. Randolph,* 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979), a trial judge's instructions are too important to be ignored in deciding what portions of a multi-purpose statute should be subjected to double jeopardy analysis. We acknowledge that it is pure speculation whether or not the jury relied upon the felony-murder instruction to convict the petitioner. Nevertheless, the possibility that the jury did indeed rely upon the instruction requires that the fourth alterna-

---

**2.** Although Pryor did not object to the felony-murder instruction at trial, he is not procedurally barred from raising the issue in federal court. The Tennessee Court of Appeals considered this question on the merits. *See Coun-*

*ty Court v. Allen,* 442 U.S. 140, 147–49, 99 S.Ct. 2213, 2219–20, 60 L.Ed.2d 777 (1979). Moreover, the appellant has not raised the procedural default issue.

tive of the Tennessee statute be scrutinized under the *Blockburger* test.[3]

■ Under most circumstances, assault with intent to commit first degree murder and assault with intent to commit robbery with a deadly weapon are different offenses within the meaning of *Blockburger* because each requires proof of a fact which the other does not. The elements of assault with intent to commit first degree murder are: (1) intent to commit a willful, deliberate, malicious and premeditated killing and (2) an overt act. *See* Tenn.Code Ann. §§ 39–604 and 2402(1). Assault with intent to commit robbery with a deadly weapon contains the elements of: (1) intent to commit robbery and (2) an overt act involving the use of a deadly weapon. *See* Tenn.Code Ann. §§ 39–607 and 3901. In the present case, however, the felony-murder instruction allowed intent to commit first degree murder to be supplied by a finding of intent to commit robbery. Under these circumstances, proof of assault with intent to commit first degree murder no longer required proof of a fact which assault with intent to commit robbery with a deadly weapon did not.[4]

The appellant responds that under the felony-murder alternative of Tennessee's statute, the state still had to prove willfulness, deliberation and malice, none of which it had to prove in order to obtain a conviction for assault with intent to commit robbery with a deadly weapon. The Tennessee

courts have held, however, that the felony-murder provision allows willfulness, deliberation, malice and premeditation to be supplied by the commission of the underlying felony. *Claiborne v. State,* 555 S.W.2d 414, 419 n. 1 (Tenn.Cr.App.1977); *Tosh v. State,* 527 S.W.2d 146, 148 (Tenn.Cr.App.1975). Accordingly, we hold that the crimes for which the petitioner was convicted were the same offense under the *Blockburger* test.

This conclusion requires us to discuss whether the Tennessee legislature has clearly indicated a desire that these offenses nevertheless be punished in cumulative fashion. The statute itself contains no such specific indication of intent and the appellant has not cited any legislative history. The appellant correctly argues, however, that we must consider the pronouncements of the Tennessee Supreme Court on this subject. *See Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).

In *State v. Briggs,* 533 S.W.2d 290, 292–93 (Tenn.1976) (*Briggs I*), the court made the following statement in construing Tennessee's first degree murder statute:

> We find neither reason nor authority for holding that one who commits murder during the perpetration of a felony named in the T.C.A. § 39–2402(4) cannot or should not be convicted and punished for both the offense of murder in the first degree and for the named felony. Nothing in the statutory definitions of

**3.** The dissenting opinion contends that the felony-murder instruction was a mere citation to a legal concept "for the purpose of explaining or distinguishing the indicted offense" and that the trial judge did not invite the jury "to consider the felony murder language as a basis for a verdict against Pryor...." We disagree. The trial judge nowhere indicated that the reference to felony murder was only included in order to differentiate it from willful, deliberate, malicious and premeditated murder. To the contrary, the court clearly instructed that first degree murder could be proven under two theories, one of which was felony murder. The jury therefore was "invited" to convict Pryor on a felony murder theory.

A second problem inherent in the dissent's position is that even if it were assumed that the felony-murder instruction were surplusage, the

dissent would approve of jury instructions containing irrelevant and potentially confusing material unless the trial judge specifically told the jury to consider the material. The purpose of jury instructions is, of course, to clarify the issues and to inform the jury of the applicable law. Jurors, who are unskilled in the criminal law, should not be misled by irrelevant instructions or burdened with the task of determining which of their instructions are pertinent and which are not.

**4.** Had the trial judge not given the felony-murder instruction and had the jury nevertheless convicted the petitioner of both offenses, the judge could have ordered the sentences to be served consecutively. In that situation, the commission of the robbery could not have supplied the intent to commit first degree murder.

murder in the first degree and of the felonies listed in T.C.A. § 39–2402(4) indicates a legislative intent that conviction and punishment for both offenses should not be permitted.

Thus, the Tennessee Supreme Court inferred legislative intent to permit consecutive sentences from the absence of evidence on the subject. This approach is wholly unacceptable under *Whalen,* which requires that the legislature "clearly indicate" that consecutive sentences are permissible for offenses which are the same under the *Blockburger* test. Furthermore, if lack of evidence of intent were to constitute a clear indication of a desire to cumulate punishments, then consecutive sentences would automatically be permissible under most statutes proscribing offenses which are the same for double jeopardy purposes. Such a result would render the *Whalen* requirement meaningless.

Secondly, we note that *Briggs I* subsequently was overruled in *Briggs v. State,* 573 S.W.2d 157 (Tenn.1978) (*Briggs II*). The appellant responds that *Briggs I* was overruled because of a misapplication of *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), and that the state court in *Briggs II* did not retract its statement concerning legislative intent. Even assuming that the statement concerning legislative intent in *Briggs I* remains good law, a debatable question which we do not reach, the statement fails to satisfy the *Whalen* standard. We therefore hold that the Tennessee legislature has not clearly indicated that consecutive sentences are proper in the situation presented by this case.

## IV.

Since application of the *Blockburger* test to the felony-murder instruction compels the conclusion that the crimes for which Pryor was convicted are the same offense, and since the state legislature has not clearly indicated that these crimes should be punished in cumulative fashion, giving the instruction subjected the peti-

tioner to double jeopardy. The judgment of the district court is AFFIRMED.

KRUPANSKY, Circuit Judge, dissenting.

Because the majority opinion is simply a discourse on what might have been if Pryor had faced a charge of felony murder, I must respectfully dissent.

Pryor was indicted on separate charges of assault with intent to commit premeditated murder in the first degree and assault with intent to commit robbery with a deadly weapon. As the majority forthrightly concedes, these offenses are "different offenses within the meaning of *Blockburger* because each requires proof of a fact which the other does not." Maj. op. at 530.

Notwithstanding this fact, the majority makes the pivotal assumption that a mere explanatory reference to the notion of felony murder in the jury instruction in some manner amended the concededly proper indictment and placed Pryor in double jeopardy. Plainly, only if the majority is correct in its assumption that the charges against Pryor were literally or effectively amended may the majority then proceed to compare assault with intent to commit felony murder and assault with intent to commit robbery for purposes of *Blockburger.*

As was stated in *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir.1978):

A variance occurs when proof at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment.

In the case at bar, despite the majority's reference to "the problem of a variance between the indictment and the jury instruction," maj. op. at 529, there is no evidence in the trial record that the State proved or even attempted to prove any *fact* at *variance* with the facts related in the indictment. The issue is, as stated, whether the jury instruction *amended* the indictment by placing Pryor at risk of conviction for felony murder.

Bearing in mind that Pryor was indicted for "premeditatedly" intending to murder

Winbush, and that the uncontradicted testimony of the victim established that Pryor had said "I'm going to kill you," the trial court's charge must be evaluated in its totality to determine the proper weight to be accorded the challenged language. *Haislah v. Walton,* 676 F.2d 208 (6th Cir.1982). This is particularly true when, as here, the defendant did not timely object to the assertedly improper passage. *United States v. Piccolo,* 696 F.2d 1162 (6th Cir.1983). In the case at bar, for purposes of clarity and comparison, the trial court commenced its instruction defining assault with intent to commit premeditated murder with a citation to the statute at issue which incorporates, *inter alia,* the elements necessary to support a conviction for both premeditated murder and felony murder. Without in any manner inviting the jury to consider the felony murder language as a basis for a verdict against Pryor, the court immediately instructed the jury as to the critical difference between the indicted offense and felony murder:

> The distinctive feature of murder in the first degree is premeditation, and involves a previously formed design, or actual intention to kill. It is not necessary that such design should have been conceived or preexisted in the mind for any definite period of time anterior to its

execution. It is sufficient if it precede the actual assault, howsoever short the interval of time may be; for the length of time is not the essence of this element of this offense. And the purpose to kill is no less premeditated, in the legal sense of the term, if it were deliberately formed but a moment before the killing, than if it had been formed an hour before. The mental state of the assailant at the time, rather than the length of time the act may have been premeditated, is the material point to be considered. The question of importance is, "Was the mind of the assailant, at the moment of the killing, so far free from excitement or passion as to be capable of premeditating, as before explained, and was the death of the party slain the object sought to be accomplished by the slayer?"

Further, a review of those components of the instruction which addressed "assault to commit murder in the first degree" and "malice," as that term was used in the definition of murder, leave no doubt that the trial judge cited felony murder solely as background or explanatory material.[1] At no time did the court inform the jury that committing an assault during a felony supplies the requisite malice for murder. In

---

1. These sections of the charge are as follows:

ASSAULT TO COMMIT MURDER IN THE FIRST DEGREE

This offense is thus defined by the statute: "Whoever shall, feloniously, and with malice aforethought, assault any person, with intent to commit murder in the first degree, or shall administer, or attempt to give, any poison or potion for that purpose, though death shall not ensue, shall, on conviction, be imprisoned in the penitentiary not less than three nor more than twenty-one years."

From this definition, it is clear, *that the assault must be made with express malice,* as above explained, toward the party assaulted, so that if death result from the assault, the crime would be murder in the first degree, before the party assaulting can be guilty of an assault with intent to commit murder in the first degree. It is equally clear, that all of the elements of murder in the first degree, must exist in the mind of the assailant, at and before the time of the assault, to justify a verdict of guilty of an assault with intent to commit murder in the first degree. (Emphasis supplied)

\* \* \* \* \* \*

MURDER

Murder is thus defined: "If any person, of sound memory and discretion, unlawfully kills any reasonable creature in being, and under the peace of the State, with malice aforethought, either express or implied, such person shall be guilty of Murder."

Malice is an intent to do an injury to another; a design formed in the mind of doing mischief to another.

A case of homicide cannot be murder, unless at and before the killing the wicked intent, constituting malice aforethought, exists in the mind of the slayer.

Malice is either express or implied. In homicide, express malice is malice against the person killed, and the slayer must have malice against the deceased in order that the killing be murder in the first degree, and in some cases, express malice is an element of murder in the second degree.

fact, the instructions clearly mandate a finding of express malice and thus belie the majority's assertion that the jury, without

2. The instruction as it relates to the various types of homicide states in its entirety:

### MURDER

Murder is thus defined: "If any person, of sound memory and discretion, unlawfully kills any reasonable creature in being, and under the peace of the State, with malice aforethought, either express or implied, such person shall be guilty of Murder."

Malice is an intent to do an injury to another; a design formed in the mind of doing mischief to another.

A case of homicide cannot be murder unless at and before the killing the wicked intent, constituting malice aforethought, exists in the mind of the slayer.

Malice is either express or implied. In homicide express malice is malice against the person killed and the slayer must have malice against the deceased in order that the killing be murder in the first degree, and in some cases, express malice is an element of murder in the second degree.

Implied malice is malice not against the party slain, but malice in general, or that condition of the mind of the slayer which indicates a wicked, depraved and malignant spirit, and a heart regardless to social duty and fatally bent on mischief.

### II
### MURDER FIRST DEGREE MAY BE FURTHER THUS DEFINED:

"An individual commits murder in the first degree if:

(1) He commits a willful, deliberate and malicious and premeditated killing or murder; or

(4) He commits a willful, deliberate and malicious killing or murder during the perpetration of any arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a destructive device or bomb.

When the act of killing is not done in the commission of some one of the felonies named in the definition of murder above, in order that it be murder in the first degree, the killing must be done willfully, this is, of purpose, with the intent that the act by which the life of the party is taken, should have that effect; deliberately, that is, with a cool purpose; maliciously, that is, with malice aforethought; and with premeditation, that is, a design to kill must be formed before the act is performed by which death is produced. In other words, proof must be adduced to satisfy the mind of the jury that the death of the party slain was the ultimate result which the concurring will, deliberation and premeditation of the party accused sought.

The distinctive feature of murder in the first degree is premeditation, and involves a previously formed design, or actual intention to kill. It is not necessary that such design should have

instruction and contrary to the given charge, could have utilized the commission of the felony to supply malice.[2]

been conceived or pre-existed in the mind for any definite period of time anterior to its execution. It is sufficient if it precede the actual assault, howsoever short the interval of time may be; for the length of time is not the essence of this element of this offense. And the purpose to kill is no less premeditated, in the legal sense of the term, if it were deliberately formed but a moment before the killing than if it had been formed an hour before. The mental state of the assailant at the time, rather than the length of time the act may have been premeditated, is the material point to be considered. The question of importance is, "Was the mind of the assailant, at the moment of the killing, so far free from excitement or passion as to be capable of premeditating, as before explained, and was the death of the party slain the object sought to be accomplished by the slayer?"

### III
### MURDER IN THE SECOND DEGREE

The principal element of murder in the second degree is malice. As before explained, the distinctive feature of murder in the first degree is premeditation, express malice is an equally essential element of that crime, and must always co-exist with premeditation before that crime can be made out against the defendant. Express malice, disconnected with any previously formed design to kill, may also be an essential element of murder in the second degree. In such case, however, the killing must be unlawful and malicious. Where the proof shows that the defendant did design and intend to kill the deceased, still if the design was formed upon a sudden impulse of passion, without adequate provocation, and disconnected with any previously formed design, and if executed willfully, and maliciously, it would be murder in the second degree.

Implied malice is an element of murder in the second degree. Malice necessary to constitute murder in the second degree is not confined to an intention to take the life of any particular person actually killed, but includes an intention to do any unlawful act which may probably result in depriving a person of life. It is not properly spite or malevolence to the individual in particular, but an evil design in general—the conduct of a wicked, depraved and malignant spirit.

Therefore it can be seen that of malice aforethought, as applied to cases of murder in the second degree, is that it is not confined to homicides committed in cold blood, with settled design and premeditation, but extends to all cases, how sudden the occasion may be, when the act is done under such cruel circumstances as are the ordinary indications of a wicked, depraved and malignant spirit, as when the

A review of the case authorities discloses that mere citation to legal concepts arguably beyond the scope of the indictment for the purpose of explaining or distinguishing the indicted offense is not, standing alone, sufficient to constitute an amendment of the indictment. *United States v. Windom,* 510 F.2d 989 (5th Cir.1975) (including definition of "forgery" in prosecution for "publishing and uttering" previously forged checks was merely explanatory of the indicted offense); *United States v. Alaimo,* 297 F.2d 604, 607 (3d Cir.1961), *cert. denied,* 369 U.S. 817, 82 S.Ct. 829, 7 L.Ed.2d 784 (1962) (although "explanation" of the particular charged offense "may or may not have been necessary," it constituted no change from what was charged in the indictment.) These cases stand in contrast to those actions wherein a jury instruction was held to have amended the indictment. In such cases, the court specifically directed the jury to consider an additional charge. *See United States v. Jones,* 647 F.2d 696 (6th Cir.), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *United*

*States v. Carlson,* 616 F.2d 446, 447 (9th Cir.1980) ("the jury was invited indeed urged" to utilize the additional language for conviction); *United States v. Smolar,* 557 F.2d 13, 19 (1st Cir.1977) (court instructed jury to consider additional offense despite variance with the indictment.) The trial court in the matter *sub judice,* by comparison, clearly instructed the jury to consider the instructions *only* insofar as they bore upon the particular offense "as charged in the First Count of the indictment."

Moreover, the jury, which had a copy of the indictment in the jury room during its deliberations, returned the following verdicts:

[T]he Jury upon their oath do say: DOCKET NO: B60818: "We, the jury, find the defendant guilty of an assault with intent to commit murder in the First Degree *as charged in the first count of the indictment* and fix his punishment at imprisonment in the state penitentiary for not less than 6 years nor more than 21 years."

punishment inflicted by a party, even upon provocation, is outrageous in its nature and continuance, and beyond all proportion to the offense, so that it is to be attributed to malignity and brutality, rather than infirmity.

Where the use of a deadly weapon, by the party killing, is shown, and the death is clearly shown in the proof to have resulted from its use by the slayer, the use of such weapon may be considered by the jury to establish that the killing was done maliciously; that is, with that malice required to support murder in the second degree. But where the death and its manner, and all the surrounding and accompanying circumstances are shown in the proof, then malice is not presumed, but the jury are to determine from the whole facts, whether or not it was present as an element in the offense.

Malice cannot be inferred from the deadly intent alone; as when one from evident necessity willfully kills another to save his own life, or to save himself from great bodily harm, and the danger is imminent and immediate. Much less can malice be inferred when the intent to kill is produced by anger; for if it were sudden and upon reasonable provocation, the killing would not be murder, but manslaughter.

Implied malice and express malice, as above explained and limited are both elements of murder in the second degree, and one or the other must always be established by the proof before the jury will be justified in finding the

defendant guilty of murder in the second degree.

## IV
## VOLUNTARY MANSLAUGHTER

If one man kills another upon a sudden heat, produced by adequate provocation, as if upon a sudden quarrel two persons fight and one kills the other, this is voluntary manslaughter; and, in general, if a person that is struck strikes again, and death ensues from the blow, it is voluntary manslaughter, the law regarding the blow as sufficient provocation to excite the passion, and the act of killing will be imputed to heat of blood and passion, rather than malice, if no undue advantage be taken by the party doing the killing. The sudden heat, which is the distinguishing characteristic of this offense, must be produced by adequate provocation, the true general rule being that reason must, at the time of the act, be disturbed by passion to an extent which might render ordinary men of fair average discretion, liable to act rashly, or without due deliberation or reflection, and from passion rather than judgment. If the act of the defendant charged in this case was the result of impulse and passion, excited upon sudden heat and adequate provocation, the idea of malice is repelled, and the assault is an assault with intent to commit voluntary manslaughter; provided that if death had resulted, the crime would have been voluntary manslaughter.

DOCKET NO: B–60819: "We, the jury, find the defendant guilty of assault with intent to commit robbery with a deadly weapon *as charged in the indictment* and fix his punishment at imprisonment in the penitentiary of the state for not less than 10 years nor more than 21 years." (Emphasis added).

These verdicts are strongly supportive of the principle that juries are presumed to follow the court's instructions; here, the instruction to consider Pryor's guilt or innocence as to premeditated murder *as charged in the indictment.*

Inasmuch as the trial court's reference to felony murder was explanatory, and not an amendment of the indictment, I conclude that the majority was without warrant to address the hypothetical implication of Pryor's exposure to a charge of felony murder. Accordingly, I would REVERSE the district court and deny entry of the writ.