IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2016

**ERIC R. WRIGHT v. GRADY PERRY, WARDEN**

**Appeal from the Circuit Court for Hardeman County**
**No. CC-16-CR-44     Joseph H. Walker, III, Judge**

_____

**No. W2016-00341-CCA-R3-HC  -  Filed January 18, 2017**

_____

The pro se petitioner, Eric R. Wright, appeals the habeas court's summary dismissal of his petition for writ of habeas corpus alleging eleven reasons why the habeas court erred. After review, we affirm the summary dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Eric R. Wright, Whiteville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; and Jonathan H. Wardle, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In January 1990, the Shelby County Grand Jury indicted the petitioner for one count of robbery with a deadly weapon and two counts of assault with intent to commit murder in the first degree, all committed on October 15, 1989. The petitioner was convicted by a jury of all counts. See Eric Wright v. State, No. W2009-00864-CCA-R3-PC, slip op. at 2 (Tenn. Crim. App. Sept. 24, 2010).

On September 20, 1990, the petitioner was sentenced as a Range III, persistent offender, to consecutive terms of thirty years for the robbery and sixty years for each assault, resulting in an effective sentence of 150 years. See Eric R. Wright v. Michael Donahue, No. 2:11-cv-03102-SHM-tmp, 2015 U.S. Dist. LEXIS 136175, at *3 (W.D. Tenn. Mar. 31, 2015). Because the offenses were committed before the effective date of

the 1989 Sentencing Act but the petitioner was convicted after the effective date of the Act, the trial court was to calculate the appropriate sentence under both the 1982 and 1989 sentencing law and impose the lesser sentence of the two. See Eric Wright, No. W2009-00864-CCA-R3-PC, slip op. at 11. The maximum effective sentence under the 1982 law would have been 180 years with no parole, which was more than the 150 years at 45% the petitioner received under the 1989 law. See id.

A brief summary of the evidence adduced at trial from an opinion of this court affirming the denial of one of the petitioner's petitions for post-conviction relief is as follows:

> This matter concerns the October 15, 1989 robbery of a Circle K service station on Lamar Avenue in Memphis, Tennessee. The evidence presented at the petitioner's trial showed that, at approximately 4:50 a.m. that day, two black males entered the store, and one of them shot Ricky Coleman, the store clerk's boyfriend, in the face without warning. The store clerk, Stella Oakes Coleman,[1] opened the register for the men, and they removed the cash from the drawer. Mrs. Coleman testified that there was approximately $20 in the register. The men demanded that she open the store's safe, but she was not able to open the time-lock safe. Instead, the men pressed the button on the safe that allowed clerks to access the currency when they needed change. In this way, the men took $10 in $1 bills from the safe. When Mrs. Coleman went to check on Mr. Coleman, who was lying on the floor, the shooter shot her twice.

See id. at 2.

The petitioner filed a direct appeal, in which he challenged the sufficiency of the convicting evidence, the legality of the verdict, and the trial court's failure to grant a special jury instruction. State v. Eric R. Wright, No. 02C01-9107-CR-00152, 1992 WL 1414, at *1 (Tenn. Crim. App. Jan. 8, 1992). This court affirmed the petitioner's convictions and sentences by memorandum opinion on January 8, 1992. Id. The petitioner did not timely file an application for permission to appeal this court's decision to the Tennessee Supreme Court. See Eric Wright v. State, No. W2001-00386-CCA-R3-PC, 2001 WL 1690194, at *1 (Tenn. Crim. App. Dec. 17, 2001). Evidently, the petitioner's appellate counsel failed to inform the petitioner that his direct appeal had been denied, and his attorney never filed a Rule 11 application for permission to appeal or moved to withdraw. See id. This came to light when the petitioner, on April 27, 2000, filed a motion for appointment of counsel to file a Rule 11 application. See id. The

---

[1] The Colemans were married on October 19, 1989.

Tennessee Supreme Court denied the petitioner's motion for appointment of counsel to file a Rule 11 application but indicated that the petitioner's recourse was to file a post-conviction petition alleging ineffective assistance of counsel and seeking a delayed appeal. See id.

On December 11, 2000, the petitioner filed a petition for post-conviction relief. See id. The post-conviction court denied the petition as untimely, but this court remanded the case to determine whether due process tolled the statute of limitations. See id. at *2-3.[2] On remand, the post-conviction court held that due process tolled the statute of limitations and granted permission for the petitioner to seek a delayed Rule 11 appeal. See Eric Wright, No. W2009-00864-CCA-R3-PC, slip op. at 3. The Tennessee Supreme Court denied the petitioner's application for permission to appeal. See id.; State v. Eric R. Wright, No. W1991-00016-SC-R11-CD (Tenn. Mar. 21, 2005) (order).

In May 2005, the petitioner filed a motion to reopen his post-conviction proceedings, as well as, contemporaneously, a second petition for post-conviction relief. See Eric Wright, No. W2009-00864-CCA-R3-PC, slip op. at 3. The petitioner alleged that his trial counsel failed to challenge a comment made by the trial court, properly investigate the case, or prepare for trial and that his sentence violated the prohibition against ex post facto laws because he was sentenced under the 1989 Act instead of the 1982 Act. See id. at 7-12. The post-conviction court conducted an evidentiary hearing, after which it denied the petition. See id. at 4-6. This court affirmed that denial. Id. at 12. The Tennessee Supreme Court denied permission to appeal on February 16, 2011. See Eric Wright v. State, No. W2009-00864-SC-R11-PC (Tenn. Feb. 16, 2011) (order).

The petitioner then filed for federal habeas corpus relief on December 15, 2011, in which he alleged that his counsel was ineffective for failing to properly investigate and prepare for trial, the trial court improperly commented on the evidence, and his sentence violated the prohibition against ex post facto laws. Eric R. Wright, 2015 U.S. Dist. LEXIS 136175, at *7, *13-14. The district court thoroughly analyzed each issue and then denied the petitioner's claim for relief. See id. at *20-94.

The petitioner filed the present petition for state habeas corpus relief on January 21, 2016. The petitioner included with his petition a document that he had sent to a Nashville attorney describing the five claims for relief he relied on in support of his petition and seeking the attorney's insight. The five claims were: the trial court lacked jurisdiction because there was no arrest report, a single course of criminal activity cannot be separated into three separate charges, the indictment was void on its face, his sentence

---

[2] One appellate judge dissented, noting that the petitioner knew by April 1998 that his attorney had not withdrawn or filed a Rule 11 application, yet the petitioner did not seek redress until December 2000. Eric Wright, 2001 WL 1690194, at *3 (Tipton, J., dissenting).

violated ex post facto laws, and the trial court illegally allowed an "unindictable" offense to proceed to trial. The habeas court summarily denied the petition on January 29, 2016, and the petitioner appealed.

## ANALYSIS

Initially, the State asserts that the petitioner provided no argument other than to reference an attachment to a letter the petitioner sent to a Nashville attorney, David Raybin, from which the petitioner asks this court to decipher the bases for his claims. However, the petitioner mentions in his brief that the habeas court clerk entered his documents out of order and that his arguments were listed as trust fund transactions instead of being attached to his habeas petition, so what the State refers to as an attachment to the letter to Mr. Raybin could possibly be the out-of-order documents. Because we give pro se petitioners greater latitude, we will look at the document to discern the petitioner's arguments.

It is well-established in Tennessee that the remedy provided by a writ of habeas corpus is limited in scope and may only be invoked where the judgment is void or the petitioner's term of imprisonment has expired. Faulkner v. State, 226 S.W.3d 358, 361 (Tenn. 2007); State v. Ritchie, 20 S.W.3d 624, 629 (Tenn. 2000); State v. Davenport, 980 S.W.2d 407, 409 (Tenn. Crim. App. 1998). A void, as opposed to a voidable, judgment is "one that is facially invalid because the court did not have the statutory authority to render such judgment." Summers v. State, 212 S.W.3d 251, 256 (Tenn. 2007) (citing Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998)).

A petitioner bears the burden of establishing a void judgment or illegal confinement by a preponderance of the evidence. Wyatt v. State, 24 S.W.3d 319, 322 (Tenn. 2000). Furthermore, when a "habeas corpus petition fails to establish that a judgment is void, a trial court may dismiss the petition without a hearing." Summers, 212 S.W.3d at 260 (citing Hogan v. Mills, 168 S.W.3d 753, 755 (Tenn. 2005)). Whether the petitioner is entitled to habeas corpus relief is a question of law. Id. at 255; Hart v. State, 21 S.W.3d 901, 903 (Tenn. 2000). As such, our review is de novo with no presumption of correctness given to the habeas court's findings and conclusions. Id.

On appeal, the petitioner identifies eleven issues for this court's review, even though he only raised five issues in support of his habeas petition below.

The petitioner first asserts that the habeas court failed to rule on every issue presented in his petition because of the clerk's erroneously filing the document describing his arguments as trust fund transactions. It is true the clerk placed the document describing the petitioner's arguments as an attachment to the affidavit of indigency, but

-4-

there is no confusion in the record about which document is which. Moreover, the habeas court's order denying relief specifically identifies each of the five issues the petitioner raised in the attached document, which were not identified elsewhere in the petition. This issue lacks merit.

The petitioner next asserts that he is entitled to the relief sought. In support of this assertion, the petitioner provides no argument other than to reference two pages in his petition. On those pages to which he refers, the petitioner claims that the indictments were void because no one died and that there is no criminal statute for "assault to murder." This issue is without merit. Although the summary of the charges on the indictment reads "assault to murder first degree," the cited statute and code section are clearly for the offense "assault with intent to commit murder in the first degree." This was a crime in existence at the time the petitioner committed the offenses, and it necessarily required that the victims survive.[3] The habeas court properly concluded that the petitioner's indictments were not defective.

The petitioner next argues that he is held under a pretense of law. The petitioner provides no explanation for this assertion except to refer to the entire eleven-page argument in the technical record that was presumably attached to his petition for writ of habeas corpus. It thus appears that the petitioner claims he is being held under a pretense of law because he believes he is entitled to relief based on the five issues raised in his petition. As we either have already and/or will address below, the petitioner is not entitled to relief based on any of his claims. This issue is without merit.

---

[3] The statute read:

Assault with intent to murder. -- (a) Whoever shall feloniously and with malice aforethought assault any person, with intent to commit murder in the first degree, or shall administer or attempt to give any poison for that purpose, though death shall not ensue, shall, on conviction, be imprisoned in the state penitentiary for not less than five (5) nor more than twenty-five (25) years.

(b) If bodily injury to the victim occurs as a result of such an assault in violation of subsection (a), the punishment shall be a determinate sentence of confinement in the state penitentiary for life or for a period of not less than five (5) years.

(c) In the case of bodily injury to the victim, the offense defined in subsection (b) of this section is a Class X felony.

[Tenn. Code Ann.] § 39-2-103 (repealed 1989).

State v. James Harris, No. 03C01-9901-CC-00007, 2000 WL 5040, at *2-3 (Tenn. Crim. App. Jan. 5, 2000).

The petitioner next argues that his indictment for assault with intent to commit murder is not "a valid law to indict, try as well convict any person." In support of this argument, the petitioner refers to three pages in his petition that claim: robbery with a deadly weapon is a "non-existing" offense; there was no true bill of indictment, no proper arrest report, or waiver of <u>Miranda</u> rights; there was a violation of ex post facto laws; he was not sentenced to the "least restrictive amount of time"; and the indictments were "so fatally defective, as to render [the] trial court without jurisdiction." The pages to which the petitioner refers do not support his argument on this issue. Moreover, as discussed above, the crime of assault with intent to commit murder existed when the petitioner committed the offenses. The indictment was valid, and there was nothing unlawful about the State indicting, trying, and convicting the petitioner for his crimes. The issue is without merit.

The petitioner next argues that the court clerk "so fundamentally mixed up papers/documents filed by [him]" that it "denied him a fair hearing process and the due process of law." To support this claim, the petitioner repeats verbatim his argument in support of his claim that the habeas court did not fully adjudicate his claims. As we determined above, there is no confusion in the record about which documents supported the affidavit of indigency and which documents were intended to support the petitioner's claims for relief, and the habeas court identified in its order each of the issues the petitioner raised in his explanatory attachment. Moreover, the petitioner fails to cite any authority that would entitle him to relief based on the court clerk's supposedly shuffling documents submitted with the habeas petition. This issue is without merit.

The petitioner next argues that "a reasonable jurist could conclude that [the] [p]etitioner['s] issues are valid . . . [and] he has a right to the relief sought" because "renowned" attorney, David Raybin, said that his issues were valid and that there is "no such crime/law as to assault to murder." The pages to which the petitioner refers include a letter the petitioner sent to attorney David Raybin with a list of the issues he intended to present for habeas review, which letter Mr. Raybin returned to the petitioner with a handwritten note. The note reads: "I found your arguments most interesting – I think the issue regarding that there's no crime as assault to murder is valid." This court is obviously not bound by a handwritten note from an attorney to a prison inmate,[4] and the standard is not whether a "reasonable jurist could conclude" that the stated issues were valid. As the habeas court found, the petitioner's sentence had not expired, the trial court had jurisdiction to sentence the petitioner, and the indictment was not defective. This issue is without merit.

---

[4] It does not appear that Mr. Raybin was aware that the petitioner was convicted of crimes committed in 1989 or that the petitioner was actually convicted of assault with intent to commit murder, not "assault to murder."

The petitioner next argues that the trial court did not have jurisdiction to try, convict, and sentence him because there was "no arrest warrant-report." In support of this claim, the petitioner provides no explanation other than referencing an unspecified number of pages from the eleven-page argument in the technical record that was presumably attached to his petition for writ of habeas corpus. This issue is waived for failing to provide an argument on the issue and, furthermore, there is no requirement that an arrest warrant issue in order to confer jurisdiction on the trial court. Cf. Tenn. R. Crim. P. 5(a)(2). This issue is without merit.

The petitioner next argues that the State violated the prohibition against double jeopardy by "taking a single course of action/conduct/episode and illegally separating it into separate events." He provides no argument on this issue other than to refer to two pages in his petition in which he asserts that the State violated the prohibition against double jeopardy when it charged him with three crimes arising out of one criminal episode and aligning his sentences consecutively. In support of his argument regarding multiple criminal charges, the petitioner selectively quotes from the indictment to prove that there was only one criminal episode and cites to two opinions from this court, State v. Franklin, 130 S.W.3d 789 (Tenn. Crim. App. 2003) and State v. Williams, 623 S.W.2d 121 (Tenn. Crim. App. 1981), for the principle that "a defendant may not be convicted - or- punished for two (2) crimes arising out of the same event."[5] However, these decisions stand for the proposition that the prohibition against double jeopardy protects criminal defendants against multiple punishments for the same offense, not that criminal defendants cannot be charged with multiple offenses arising from the same criminal episode. For example, in Franklin, this court found that the defendants could not be convicted of two counts of aggravated robbery where only one theft occurred, but they could be convicted of two counts of aggravated assault because the two victims were each threatened with a gun during the course of the robbery. See Franklin, 130 S.W.3d at 798. The petitioner's convictions align with Franklin: he was convicted of one count of robbery and there was only one robbery; he was convicted of two counts of assault with intent to commit murder because he assaulted two different people. There is no double jeopardy violation.

The petitioner also asserts that his protection against double jeopardy was violated by his receiving consecutive sentences because such sentences were prohibited by an unspecified statute. The petitioner also cites two cases in support of his assertion that double jeopardy prohibits consecutive sentences, one of which does not mention the term "double jeopardy" and actually upheld consecutive sentences imposed by the court where the two defendants were convicted of "assault to commit murder in the first degree" and

---

[5] The language quoted by the petitioner does not appear in either opinion.

"robbery with a deadly weapon." See Grey v. State, 542 S.W.2d 102, 102-04 (Tenn. Crim. App. 1976).[6] The other case, an *en banc* Sixth Circuit opinion, held that consecutive sentences were inappropriate where the defendant was convicted of assault with intent to commit felony murder and assault with intent to commit robbery with a deadly weapon because, in that specific situation, they were the same offense under the Blockburger analysis due to the trial court's including felony murder in its charge to the jury, and the legislature had not clearly indicated that consecutive sentences were allowed in that situation. Pryor v. Rose, 724 F.2d 525, 529-31 (6th Cir. 1984); see Blockburger v. United States, 284 U.S. 299, 304 (1932). However, the court noted that "[u]nder most circumstances, assault with intent to commit first degree murder and assault with intent to commit robbery with a deadly weapon are different offenses within the meaning of Blockburger," Pryor, 724 F.2d at 530, and thus not subject to further inquiry before consecutive sentences could be imposed. There is no double jeopardy violation in this case.

The petitioner next argues that the indictments against him "were so fatally flawed" as to deprive the trial court of jurisdiction. He provides no argument on this issue other than to refer to three pages in his petition in which he asserted that the indictments against him were void because he was indicted for "assault to murder," which is not a crime, and no one was murdered. We have previously touched on this allegation above but will note again that, although the summary of the charges on the indictment reads "assault to murder first degree," the cited statute and code section are clearly for the offense "assault with intent to commit murder in the first degree." This was a crime in existence at the time the petitioner committed the offenses, and it necessarily required that the victims survive. The habeas court properly concluded that the indictment was not defective, and this issue is without merit.

The petitioner next asserts that his sentence violated the prohibition against ex post facto laws. Again, the petitioner provides no argument on this issue other than to refer to four pages in his petition in which he asserted that his sentence would have been significantly less had the court sentenced him under the 1982 law, rather than the 1989 law. He is correct that the trial court was required to calculate his sentence under both the 1982 and 1989 Sentencing Acts and then impose the lesser sentence. However, this is exactly what the trial court did, as described by this court on review of the denial of the petitioner's claim for post-conviction relief and the federal district court on consideration of the petitioner's claim for federal habeas corpus relief. See Eric Wright, No. W2009-00864-CCA-R3-PC, slip op. at 6, 11; Eric R. Wright, 2015 U.S. Dist. LEXIS 136175, at *25-26, *76-91. The petitioner compares concurrent lesser sentences he theoretically

---

[6] Interestingly, the Grey court also found "no merit in plaintiffs-in-error's argument that these four offenses were only one criminal event and should therefore result in one punishment." 542 S.W.2d at 104.

could have received under the 1982 Act with the consecutive maximum sentence he actually received under the 1989 Act and concludes that he should have been sentenced under the 1982 Act. However, the petitioner is not comparing apples to apples – had the court imposed the maximum sentence available under the 1982 Act, he would have received three consecutive life sentences of sixty years each with no chance of parole. See Eric Wright, No. W2009-00864-CCA-R3-PC, slip op. at 11. Instead, the trial court imposed a total effective sentence of 150 years at 45% release eligibility. He clearly received the lesser of the maximum sentences available under the two sentencing schemes.

The petitioner also appears to argue that the offense of robbery with a deadly weapon either did not exist under the 1982 Act or it was a lesser grade of felony. However, the trial court would have accounted for the classification of each offense under each version of the law when it sentenced the petitioner and appears to have done so. See Eric R. Wright, 2015 U.S. Dist. LEXIS 136175, at *84-88; see also Eric Wright, No. W2009-00864-CCA-R3-PC, slip op. at 11. The petitioner has not shown that his sentence is void.

The petitioner lastly asserts that the trial court "acted in contravention of a statute, as well [as] upon an unindictable offense" in convicting him. Again, the petitioner provides no argument on this issue other than to refer to two pages in his petition in which he asserted, without explanation, that the trial court did not have a lawful indictment or arrest report, did not sentence him to the least restrictive amount of time and violated ex post facto laws, never provided the petitioner with his Miranda rights, and that the indictment was fatally defective. These pages only recap the petitioner's arguments without additional analysis or support and, as discussed above, all of those arguments lack merit.

Even giving the petitioner a significant amount of leeway considering the huge insufficiencies in his brief and arguments, we conclude that none of the petitioner's issues entitle him to habeas corpus relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the habeas court's summary dismissal of the petition.

_____
ALAN E. GLENN, JUDGE