**STATE of Tennessee, Appellee,**

v.

**James Henry GILBERT, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 1, 1980.

Permission to Appeal Denied by Supreme Court on March 2, 1981.

* I am not in accord with the majority's treatment of "deterrence". I think probation may be denied on the deterrence factor alone under the Amendment to T.C.A. § 40–2904. Therefore, I concur in results only.

Conrad Finnell, Cleveland, for appellant.

William M. Leech, Jr., Atty. Gen., William P. Sizer, Asst. Atty. Gen., Nashville, Richard A. Fisher, Dist. Atty. Gen., Cleveland, for appellee.

## OPINION

TATUM, Judge.

The defendant, James Henry Gilbert, was sentenced to serve 15 years in the State penitentiary upon conviction of second degree murder. On this appeal, he complains that the evidence was insufficient to support the verdict, the State's calling two witnesses not listed on the indictment, the court's refusal to permit him to read the testimony of two State witnesses given at a prior trial, alleged prosecutorial misconduct, and the trial judge's jury instructions. After considering the issues presented and the entire record, we conclude that the judgment must be affirmed.

This was the second trial of the case, the first trial having resulted in a mistrial. The trial court directed a verdict of not guilty on the charge of first-degree murder and submitted the case to the jury on the charge of second-degree murder and included offenses. This prosecution arose from a shooting that occurred in a trailer park owned by the defendant in which the victim lived with his wife and baby.

In his first issue for review, the defendant insists that the evidence was insufficient to support a finding of malice or to establish that the defendant did not act in self-defense. The State's proof tended to establish that the defendant procured a .38 caliber pistol and a .357 magnum pistol, went to the trailer park and shot two times at a dog owned by the victim. The dog was running loose in violation of the defendant's rules. The defendant shot twice at the dog and hit it once. The dog fled, trailing blood; and the defendant pursued it.

The victim was visiting acquaintances in a trailer; and after hearing the two shots fired at the dog, his companions heard him "mutter something" similar to "I seen you, Mr. Gilbert." The victim appeared angry

and ran out of the trailer. Soon thereafter, the occupants of the trailer heard four more shots and then went outside the trailer where they found the victim lying on the ground, shot in the abdomen, left ear, right side of the chest, and in the leg. None of the State's witnesses observed the beginning of the shooting; but witnesses testified that after the victim had fallen to the ground, they came upon the scene and observed the defendant standing over the victim and firing the last two shots into him while he was prostrate on the ground. The victim died from the gunshot wounds. After his death, a cigarette lighter was found in his right hand, and there was a closed pocketknife in his right front pocket. The victim was not otherwise armed.

The defendant's proof consisted of evidence that the victim had permitted the dog to run at large in flagrant violation of the defendant's rule; the dog had attacked the defendant and annoyed other tenants in the park. The defendant testified that the victim had not kept repeated promises to comply with his rule concerning dogs.

The only witness who testified for the defense with regard to the actual shooting was the defendant himself. He testified that the victim asked him why he had shot the dog, and he replied that the dog had attacked him. The victim did not threaten the defendant. He said that the victim continued to walk toward him, and he backed up 60 feet or more before the victim ran his hand in his right front pocket. The defendant had observed a bulge in that pocket. When the victim was 2 feet or less from the defendant, the defendant shot him in the abdomen, and the victim "doubled over and started falling backwards." He repeatedly testified that he did not remember firing the pistol after the first time, but at one point he testified that he fired the second shot while the victim was "falling backwards."

■ The evidence supports the jury's finding of malice, and it also supports the jury's rejection of the defendant's plea of self-defense. The use of a deadly weapon is sufficient to support a finding of malice.

*Claiborn v. State*, 555 S.W.2d 414 (Tenn.Cr. App.1977). Malice may be implied from all of the circumstances surrounding the killing. *Wilson v. State*, 574 S.W.2d 52 (Tenn. Cr.App.1978). The degree of homicide in the killing was for the jury to determine from the evidence. *Tate v. State*, 219 Tenn. 698, 413 S.W.2d 366 (1967). The jury was entitled to accept that part of the defendant's proof they felt was consistent with truth and reject that portion they believed originated in falsity. *Batey v. State*, 527 S.W.2d 148 (Tenn.Cr.App.1975).

■ The law of self-defense is not available in a homicide case unless the defendant has a genuine and well-founded fear that he was in danger of death or great bodily harm and that the actions he took were necessary. *State v. Wilson*, 556 S.W.2d 232 (Tenn.1977). The issues of self-defense and degree of homicide are for the jury to decide in the light of all of the circumstances of the killing. *Wilson v. State, supra*, at 55. The shooting of the victim four times with a pistol under the circumstances outlined above abundantly justifies a finding of malice. Even if the jury had believed the defendant's testimony concerning the actions of the victim before being shot, the jury would have been justified in rejecting the defendant's theory that his apprehension was well-founded. We find evidence upon which a rational jury could be convinced beyond a reasonable doubt of the defendant's guilt. Rule 13(e), Tennessee Rules of Appellate Procedure.

The defendant next complains that the trial court erred in permitting the witness, Victor Cox, to testify for the State because his name was not listed on the indictment or given to defense counsel until after the jury had been selected and immediately before trial. Casey Smith and Victor Cox were playing basketball with other teenagers approximately 200 yards from the scene of the shooting. Upon hearing the two shots fired at the dog, they ran to a position where they could observe the shooting. They arrived at their vantage point in time to observe the last two shots fired by the defendant while the victim was lying on

the ground. These two witnesses fled. On Friday before the case was tried on Monday, Casey Smith made it known to the District Attorney General that he had observed some of the shooting. On Friday night, this information was passed to an associate in the defense counsel's firm. On Saturday, the defendant's attorney was further notified; and on Sunday, the District Attorney General passed what other information he had to defense counsel. Defense counsel talked to Smith over the telephone about the occurrence and had photographs at the trial which depicted the terrain where the boys traveled and observed the shooting. The name of Victor Cox was not ascertained by the State until the morning of the trial. Defense counsel did not object to Smith's testifying but did object to Cox's being permitted to testify. The testimony of both Smith and Cox were of the same import. Defense counsel was given an opportunity to talk with both witnesses before they testified, and the defendant made no motion for a continuance.

T.C.A. § 40–2407 directs the Attorney General to endorse on each indictment the names of witnesses he intends to present at the trial. This section is directory only, and a witness is not disqualified to testify because his name does not appear on the indictment. *Aldridge v. State*, 4 Tenn. Cr.App. 254, 470 S.W.2d 42 (1971); *Houston v. State*, 567 S.W.2d 485 (Tenn.Cr.App. 1978). There is nothing to indicate that Cox's testimony would have been different if defense counsel had been permitted to interview him earlier. Permitting this witness to testify did not constitute error. *Aldridge v. State, supra.*

The defendant next complains that "the court erred in refusing to permit defense counsel to read the testimony of Randall Couey and Morris Buchanan when they were called as State's witnesses at the first trial of this case." The record reflects that Couey and Buchanan testified for the State at the first trial. They were two individuals who were in the trailer with the victim when the dog was shot. These witnesses remained in the trailer during the time that the victim was shot and did not observe any of the episode between the defendant and the victim. The defendant did not subpoena either of these witnesses because counsel assumed the State would use them again. We glean that the State probably had subpoenaed the witnesses, but the officers had not found them although they were in the county of their residences.

The defendant did not tender or offer to read the testimony of these witnesses. Defense counsel told the court:

"If Mr. Fisher [the District Attorney General] is not going to use these witnesses we think we should have the option, Your Honor, and I don't know right now if we would exercise it, but the option of reading the testimony of State's witnesses, [sic] sworn testimony from the previous trial."

The defendant only requested an option to use this evidence, and counsel stated that he might not use the evidence if granted the option. Unless the evidence is actually tendered or offered in good faith, then the trial judge will not be put in error for failure to allow the evidence. *Robinson v. State*, 69 Tenn. 673 (1878). We cannot say that the defendant would have exercised the option if it had been granted; nor could we say that the option would be exercised at another trial in the event of a remand. Thus, we are unable to say that the denial of this evidence more probably than not affected the judgment or would result in prejudice to the judicial process. Rule 36(b), Tennessee Rules of Appellate Procedure.

The defendant assigns issue that the District Attorney General asked him on cross-examination whether he had killed dogs in the past. The defendant answered the question in the negative before an objection was interposed, and the trial judge, holding that the question was immaterial, did not permit the State to pursue the matter further. We find neither error nor prejudice and overrule this issue.

Finally, the defendant complains of the refusal of the trial court to grant three

special requests for jury instructions. We have examined the special requests and read the trial court's main charge in its entirety. We find that the trial court correctly instructed the jury as to the law of the case and that the main charge covered all matters mentioned in the special request. See *Gunn v. State*, 487 S.W.2d 666 (Tenn.Cr.App.1972), *cert. den.*, 410 U.S. 958, 93 S.Ct. 1427, 35 L.Ed.2d 692 (1973).

The judgment of the trial court is affirmed.

DWYER and CORNELIUS, JJ., concur.