IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER SESSION, 1998

FILED

March 23, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9711-CR-00520 |
| | ) | |
| Appellee, | ) | |
| | ) | McMINN COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. R. STEVEN BEBB, JUDGE |
| JOHNNY MARTIN, | ) | |
| | ) | |
| Appellant. | ) | (SECOND DEGREE MURDER) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

CHARLES M. CORN                       JOHN KNOX WALKUP
District Public Defender              Attorney General & Reporter

WILLIAM C. DONALDSON                  ELIZABETH B. MARNEY
Assistant Public Defender            Assistant Attorney General
10th Judicial District                2nd Floor, Cordell Hull Building
110 ½ Washington Avenue NE            425 Fifth Avenue North
Athens, TN  37303                     Nashville, TN  37243

GERALD L. GULLEY, JR.                 JERRY N. ESTES
Attorney at Law                       District Attorney General
P.O. Box 1708                         10th Judicial District
Knoxville, TN  37901-1708             130 Washington Avenue NE
(On Appeal Only)                      P.O. Box 647
                                      Athens, TN  37371-0647

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Johnny Martin, appeals as of right his conviction for second degree murder following a jury trial in the McMinn County Criminal Court. Defendant was found guilty on January 29, 1985. He was subsequently sentenced to serve thirty (30) years as a Range I Standard Offender on March 1, 1985. He also filed a Motion for New Trial on that same date. For reasons totally unexplained in the record, the trial court did not enter an Order denying the Motion for New Trial until June 3, 1997. The hearing on the Motion for New Trial is not transcribed in the record. However, the trial court's Order indicates the motion was not heard until November 4, 1996.

At the conclusion of the sentencing hearing, the trial court asked defense counsel if he was ready to argue the Motion for New Trial, to which defense counsel responded, "[n]ot at this time." After the Order was entered denying the Motion for New Trial, the court appointed the public defender on August 15, 1997, to represent Defendant on appeal of his conviction. On November 14, 1997, the trial court entered a second Order denying the Motion for New Trial. This Order instructed the public defender to file a Notice of Appeal within thirty (30) days. The public defender filed a Notice of Appeal on November 18, 1997. The second Order of the trial court denying the Motion for New Trial is of no effect. See generally State v. Pendergrass, 937 S.W.2d 834 (Tenn. 1996). More than thirty (30) days had elapsed between the entry date of the first Order denying the Motion for New Trial and the date the Notice of Appeal was filed. Therefore, the Notice of Appeal was untimely. However, in the interest of justice, we waive the requirement of a Notice of Appeal being filed within

thirty (30) days of an Order entered denying a Motion for New Trial, and we will address the issues Defendant has presented. Defendant sets forth three issues in his Motion for New Trial, two of which, in essence, challenge the sufficiency of the evidence to support the conviction. The third issue asserts that the trial court erred in its charge to the jury concerning aiding and abetting. Defendant has also presented two (2) additional issues in his brief on appeal which were not raised in the Motion for New Trial. Although these issues should be deemed waived, we will again, in the interest of justice, address those issues on the merits. The first one challenges the jury instructions on malice and the second challenges the admissibility of certain testimony admitted at trial. After a careful review of the entire record, we affirm the judgment of the trial court.

On November 24, 1984, between 5:30 and 6:00 p.m., Defendant and his brother Danny Martin went to Wayne's Package Store which was owned by Hugh "Skunk" Torbett, the victim. Diane Pierce, an employee of the store, sold both Defendant and his brother a bottle of beer that evening, and each man also paid Pierce a two dollar cover charge. Ms. Pierce testified that Defendant appeared drunk because he was staggering and was very "glassy-eyed." She also testified that he had a "bulge" in the front of his pants that looked like it might have been a gun. However, she said she wasn't positive it was a gun. After about fifteen minutes in the store, Ms. Pierce approached Defendant and told him that he would have to leave because Defendant had been barred for brawling a few months earlier. Defendant and his brother then purchased a six pack of beer to go and left the establishment with Sandy Wells and Kim Harris.

Sandy Wells testified that the four of them left Wayne's Package Store to go smoke marijuana. She said that they drove to the 411 Package Store where Defendant purchased more beer. She also said, "I could tell they [Defendant and his brother] had been drinking. I wouldn't say that they were sloppy drunk but they were intoxicated." Ms. Wells later told Defendant and his brother that she wanted to go back to Wayne's Package Store because she had a date. According to Ms. Wells, Defendant said, "[t]here's going to be trouble. I know there will be trouble." Ms. Wells testified that she did not see a weapon on either Defendant or his brother, nor did she see a "bulge" under Defendant's pants. She said that the four of them were gone from Wayne's Package Store a total of about thirty minutes.

When they returned to Wayne's Package Store, Ms. Wells met her boyfriend outside and the two of them went inside to get a beer. After they had been inside a few minutes, Ms. Wells saw Defendant and his brother come inside. As Defendant entered the bar, the owner/victim came over and told him that he would have to leave because he had been barred. While the victim and Defendant were talking, the victim put a hand on each of Defendant's shoulders and backed him towards the door. Danny Martin was following them. As the men approached the door, the victim reached out to open it and Defendant, Danny, and the victim all fell down. Defendant fell straight back and the victim fell partially to the left of him and partially on top of him. Danny fell to the floor on his hands and knees. Ms. Wells, along with several other witnesses, testified that she heard a gunshot right as the men hit the ground, but no one saw either Defendant or Danny with a gun at that time. The victim rolled away from Defendant, got up, and ran outside the building with Defendant and Danny following behind him. Witnesses saw Defendant with a gun in the parking lot three seconds after the shooting. Although one witness later saw

-4-

Danny Martin shoot at the victim as he ran, expert testimony showed that the victim was wounded and killed by one close-range shot.

Diana Konkoly, a criminalist at the Tennessee Bureau of Investigation, testified that she analyzed swabs from the hands of Defendant and his brother. She testified that the results of the analysis led her to believe that Defendant could have fired or handled a gun that evening. The results of the analysis of the swab from Danny Martin's hands were inconclusive. Ms. Konkoly also testified that the maximum distance from which the gun was fired was three feet.

Dr. Bill Foree performed the autopsy on the victim. He testified that there was only one gunshot wound on the victim and that the wound was created by the bullet entering at an upward angle. He also said that the wound was a "close gunshot wound," which he described as one caused by a shot being fired from three feet or less.

Detective Gary Robbins testified that the weapon used to kill the victim was never found.

## I. Sufficiency of the Evidence

In the first issue, Defendant argues that the evidence was insufficient to support a jury verdict of second degree murder. Specifically, he argues that the State failed to prove that he committed the murder with malice.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosection, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Moreover, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn.

Crim. App. 1981). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude beyond a reasonable doubt every other reasonable hypothesis save guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987).

At the time of the offense, second degree murder was defined as a malicious killing. See Tenn. Code Ann. § 39-2-211 (repealed 1989). Defendant challenges the sufficiency of the evidence as to the malice requirement. However, malice may be expressed or implied. Malice may be inferred from the circumstances surrounding the killing. See State v. Gilbert, 612 S.W.2d 188,190 (Tenn. Crim. App. 1980), perm. to appeal denied (Tenn. 1981); Wilson v. State, 574 S.W.2d 52, 55 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1978). Malice may also be implied from the use of a deadly weapon resulting in death. Wilson, 574 S.W.2d at 55. Whether the facts establish such malignity as to establish second degree murder is a factual question within the jury's province. State v. Johnson, 541 S.W.2d 417 (Tenn. 1976).

We conclude that the record contains sufficient evidence for a finding that Defendant maliciously killed the victim. Defendant had been banned from Wayne's Package Store three months earlier for brawling. When Defendant went to the establishment on the day of the murder, he was told by Ms. Pierce that he was not

allowed there and he was asked to leave. After leaving the store for approximately thirty minutes, during which time he drank beer and possibly smoked marijuana, he told Ms. Wells that "[t]here's going to be trouble. I know there will be trouble." He then went back inside the establishment where he saw the victim. The victim approached Defendant and asked him to leave. Defendant resisted and argued with the victim about leaving. While the victim was attempting to remove Defendant from the premises, the fatal shot was fired. According to witnesses, Defendant had a gun in his hand just seconds after the shooting. Residue from firing or handling a gun was later found on his hands. The jury could have inferred from the evidence presented that Defendant acted with malice in killing the victim. This issue is without merit.

## II. Jury Instructions

### A. Aiding and Abetting Instruction

Defendant contends that the trial judge erred by instructing the jury on aiding and abetting where Defendant was the only criminal actor. He argues that the instruction confused the jury and prejudiced him.

At trial, defense counsel's cross-examination of witnesses elicited responses suggesting that Defendant was not seen with a gun before the killing. Mrs. Pierce said that she saw only a bulge in Defendant's waistband, not necessarily a gun. Mrs. Wells testified that she never saw a bulge under Defendant's belt. The defense elicited testimony that Defendant's right hand was not visible during the scuffle and that no one actually saw Defendant shoot the victim when the two of them fell to the floor. One witness even testified that he saw Defendant's brother, Danny Martin,

fire a shot at the victim in the parking lot from a distance of approximately 30 feet. However, as Defendant points out, the scientific evidence presented at trial established that the fatal shot to the victim was fired from a distance of three feet or less.

The trial judge did state to counsel that "[a]n aiding and abetting charge might be confusing to a jury, but, gentlemen, I believe an aiding and abetting charge belongs there." Nonetheless, the defense theory that there was not enough evidence to show that Defendant was the one who actually killed the victim warranted an aiding-and-abetting charge. However, Defendant has failed to show how the aiding-and-abetting instruction either confused the jury or prejudiced him. This issue is without merit.

B. Presumption of Malice

Defendant contends that it was a violation of his constitutional rights for the trial court to charge the jury that malice was presumed in a homicide and that the use of a deadly weapon permitted a presumption that the perpetrator acted with malice. See Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). Specifically, Defendant claims that the evidence of malice is weak in the case sub judice, and this issue should therefore be controlled by State v. Martin, 702 S.W.2d 560 (Tenn. 1985).

As Defendant concedes, he did not challenge the jury instruction on the basis of malice either at trial or in his motion for a new trial. The record shows that the only objection Defendant made pertaining to the instructions was based on the

aiding and abetting charge. Similarly, the motion for new trial did not challenge the jury instruction on malice. Accordingly, Defendant has waived the challenge to the jury instruction on malice. Tenn. R. App. P. 3(e) and 36(a).

However, even addressed on the merits, Defendant's claim that the instructions constituted reversible error is without merit. The pertinent portions of the instructions complained of are as follows:

> All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption, but this does not shift the burden of proof. The [S]tate still must prove each element beyond a reasonable doubt. Thus, if the [S]tate has proven beyond a reasonable doubt that a killing has occurred, then it is presumed that the killing was done maliciously, but this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the defendant, or exists in the evidence of the [S]tate.

> Likewise, if a deadly weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, then there is raised a presumption of malice sufficient to support a conviction of murder in the second degree unless it is rebutted by other facts and circumstances.

The United States Supreme Court held in Sandstrom v. Montana that due process is violated by instructing a jury as to the evidentiary presumptions to establish elements of a crime in such a manner that relieves the State of its burden of proof. 442 U.S. at 523-24, 99 S. Ct. 2450, 2458-59, 61 L. Ed. 2d 39. However, violations of the Sandstrom rule are subject to harmless error analysis. Rose v. Clark, 478 U.S. 570, 580, 106 S. Ct. 3101, 3107, 92 L. Ed. 2d 460 (1986).

In State v. Bolin, a decision by our supreme court approximately four months prior to the Defendant's trial, the court ruled that the word "inference" should be substituted for the word "presumption" in all instructions except the one on the presumption of innocence. 678 S.W.2d 40, 44-45 (Tenn. 1984). However, the court in Bolin also held that the jury instruction in that case could not have been interpreted by a reasonable jury as mandatory or as shifting the burden of persuasion to the defendant on the element of malice. Id. at 44. The instructions in the case sub judice, as in Bolin, clearly and repeatedly emphasized that the presumption of innocence remained with the Defendant and that the burden of proving his guilt beyond a reasonable doubt remained on the State throughout the trial. Specifically, the trial court explained:

> The law presumes that the defendant is innocent of the charges against him. This presumption remains with the defendant throughout every stage of the trial, and it is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden never shifts but remains on the State through the trial of the case. The defendant is not required to prove his innocence.

We find that the court made it quite clear that there was no shifting of any burden. When considering the propriety of such jury instructions, the United States Supreme Court has held that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973).

The court in Bolin also held that any error in the instructions was harmless in that case given the overwhelming evidence against the defendant. Bolin, 678

S.W.2d at 45. The court instructed that the entire record should be examined to determine whether the verdict was (or could have been) reached without resort to the "presumption" of malice. Id. at 45. Turning to the facts in the case sub judice, on the night of the shooting, Defendant was asked to leave Wayne's Package Store from which he had previously been barred for brawling. He left and then drove around in a car during which time he drank beer and smoked marijuana. While in the car, he told the other passengers that if they went back to Wayne's Package Store then there was "going to be trouble." Upon his return to Wayne's approximately thirty minutes later, he was asked to leave by the owner/victim. Moments later a gun went off as Defendant and the victim fell to the floor which proved later to be the fatal shot to the victim. Although no witnesses actually saw the gun in Defendant's hand at the time it went off, witnesses did testify that they saw a gun in Defendant's hand three second after the shooting. Defendant then fled from the establishment.

If facts independently establish the element of malice, "presumptive" instructions do not have a harmful effect upon the fact-finding process. See Adkins v. State, 911 S.W.2d 334, 346 (Tenn. Crim. App. 1994), perm. to appeal dismissed (Tenn. 1995). We think most reasonable jurors would readily conclude from these facts that Defendant acted with malice. See Bolin, 678 S.W.2d at 45. The existence of malice was established by proof of Defendant's own actions, not by resort to a presumption. Therefore, the instruction was harmless beyond a reasonable doubt.

We note that the instructions in the case before us differ greatly from the ones in Martin, 702 S.W.2d 560. In that case, the trial court did not explain that rebuttal proof could be established by evidence from the State or from the accused, and it

did not sufficiently define malice.  Id. at 564.  Conversely, in the present case, the court offered three paragraphs on malice which were far more specific and detailed than those found in Martin.  Moreover, the instructions specifically explained that rebuttal could be established by evidence from either the State or from the accused, contrary to Martin.  Even though the trial judge in the case sub judice charged that "[a]ll homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption," the court also immediately went on to say "but this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the defendant, or exists in the evidence of the [S]tate."  Finally, the facts of Martin did not sufficiently establish malice as we have previously found they did here.  This issue is without merit.

### III.  Admissibility of Expert Testimony

Defendant argues in this issue that the trial court erred by allowing the expert testimony of Ms. Konkoly because her testimony did not substantially assist the jury.

Defendant did not object to Konkoly's testimony at trial and has therefore waived the issue of whether her testimony was proper.  Tenn. R. App. P. 36(a); State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988).  Also, Defendant did not raise the issue in his motion for a new trial.  Failure to include an issue in the motion for a new trial results in the waiver of that issue.  Tenn. R. App. P. 3(e); State v. Keel, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994).  Furthermore, even after reviewing Ms. Konkoly's testimony, we do not believe the trial judge abused his discretion in allowing the expert testimony.  State v. Caughron, 855 S.W.2d 526, 537 (Tenn. 1993).  This issue is without merit.

Based on all the foregoing, we affirm the judgment of the trial court.

-14-

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

_____
DAVID H. WELLES, Judge